PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CANTU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAPESTRY, INC., a Maryland corporation, d/b/a COACH.COM; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. **'22CV1974 BAS DDL**<br><br>**CLASS ACTION COMPLAINT** |

# I.  INTRODUCTION

Whenever someone watches a video on www.coach.com (the "Website"), Defendants secretly report all the details to Facebook: the visitor's identity, the titles watched, and more. Why? So Facebook can bombard the person with *more* ads urging the person to buy products from Defendants.

As shown below, Defendants' actions violate the Video Privacy Protection Act ("VPPA"). As such, Defendants are liable to each class member for $2,500 and related relief.

# II.  JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Video Privacy Protection Act ("VPPA"), a federal law.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the claims occurred in this District.

3. Defendants are subject to personal jurisdiction because they have sufficient minimum contacts with California and do business with California residents.

# III.  PARTIES

4. Plaintiff Jesse Cantu ("Plaintiff") is a resident and citizen of California.

5. Defendant is a Maryland corporation that owns, operates, and/or controls the Website.

6. The above-named Defendants, along with their affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

### A. THE FACEBOOK TRACKING PIXEL

8. Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1] To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

9. Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3] Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

10. Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

---

[1] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity (last visited December 12, 2022).
[2] FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited December 12, 2022).
[3] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https:/www.facebook.com/business/help/20502906038706 (last visited December 12, 2022).
[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited December 12, 2022).
[5] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited December 12, 2022).
[6] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764 94 (last visited December 12, 2022); FACEBOOK, CREATE A WEBSITE CUSTOM

Continued on the next page

11. The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

12. Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

13. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

## B. COACH.COM AND THE FACEBOOK PIXEL

14. Defendants' business plan involves persuading potential customers to try their products via the use of persuasive "product demonstration" videos. As such, Defendants are "video tape service providers" under the VPPA because, as part of their business, they deliver "prerecorded video" content or other "similar audio visual materials."

15. Coach.com hosts and delivers content including previously recorded livestream videos.

---

AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited December 12, 2022).
[7] FACEBOOK, RETARGETING, https://www.facebook.com/business/oals/reta getting.
[8] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited December 12, 2022).
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited December 12, 2022).
[10] *Id.*
[11] *Id.*

**Figure 1**



16. Coach.com hosts the Facebook tracking Pixel and transmits numerous distinct events to Facebook.[12]

**Figure 2**



17. Defendants have configured the PageView event to transmit the URL and the category of content selected.

---

[12] This data is derived from a tool created and offered by Facebook.

**Figure 3**



18. In the above figure, for example, Defendants disclose a webpage's Universal Resource Locator ("URL").

19. Microdata discloses the video's title and other descriptors.

**Figure 4**



- 6 -
CLASS ACTION COMPLAINT

20. The aggregate pixel events (Page View and Microdata Automatically Detected) permit an ordinary person to identify a video's content, title, and location.

21. When a visitor watches a video on Coach.com while logged into Facebook, Defendants compel a visitor's browser to transmit the c user cookie to Facebook. The c user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, Defendants compelled the browser to send ten cookies:

**Figure 5**

| Name | Value | Domain |
| --- | --- | --- |
| c_user | 100087271304389 | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qHVChfr | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |
| wd | 1440x736 | .facebook.com |
| locale | en_US | .facebook.com |
| dpr | 2 | .facebook.com |
| presence | C%7B%22t3%22%3A%5B%5D%2C... | .facebook.com |
| fr | 0iLmxmGApZkrtQX6F.AWUVTgt_-M3... | .facebook.com |
| xs | 25%3AgDse9ap6e1e3_w%3A2%3A16... | .facebook.com |

22. When a visitor's browser has recently logged out of Facebook, Defendants will compel the browser to send a smaller set of cookies:

**Figure 6**

| Name | Value | Domain |
| --- | --- | --- |
| wd | 1440x736 | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |
| dpr | 2 | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qHVChfr | .facebook.com |
| locale | en_US | .facebook.com |
| fr | 0iLmxmGApZkrtQX6F.AWUIWml_SxQ... | .facebook.com |

23. The fr cookie contains an encrypted Facebook ID and browser identifier.[13] The datr cookies also identifies a browser.[14] Facebook, at a minimum, uses the fr cookie

---

[13] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v facebook.org/ODPC_Review.pdf (last visited December 12, 2022).
[14] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited December 12, 2022).

to identify particular users.[15]

24.     The _fbp cookie contains, at least, an unencrypted value that uniquely identifies a browser.[16] As with the fr cookie, Facebook uses the _fbp cookie to identify users.

**Figure 7**

| Name | Value | Domain |
|---|---|---|
| _fbp | fb.1.1670092483768.523592643 | .coach.com |

25.     The Facebook Tracking Pixel uses both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e., Coach.com.[17] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Facebook.[18] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

26.     Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

27.     A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

28.     Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what

---

[15] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited December 12, 2022).
[16] FACEBOOK, CONVERSION API, https://developers.facebook.com/docs/marketingapi/conversions-api/parameters/fbp-and-fbc/ (last visited December 12, 2022).
[17] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited December 12, 2022). This is confirmable by using developer tools to inspect a website's cookies and track network activity.
[18] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie (last visited December 12, 2022). This is also confirmable by tracking network activity.

Coach.com videos a user has watched.[19]

29. By compelling a visitor's browser to disclose the c_user cookie alongside event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

30. By compelling a visitor's browser to disclose the fr and _fbp cookies alongside event data for videos, Defendants knowingly disclose information sufficient to permit an ordinary person to identify a specific individual's video viewing behavior.

31. By compelling a visitor's browser to disclose the fr cookie and other browser identifiers alongside event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

32. Facebook confirms that it matches activity on Coach.com with a user's profile. Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[20] The off-site activity report confirms Defendants identify an individual's video viewing activities.

## C. EXPERIENCE OF PLAINTIFF

33. Plaintiff is a consumer privacy advocate with dual motivations for watching a video on Defendants' Website. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendants. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by federal law. As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

---

[19] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (last visited December 12, 2022).

[20] *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited December 12, 2022).

34. In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss. As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiff. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).[21]

35. During the relevant time period, Plaintiff visited Coach.com and watched a video.

36. When Plaintiff watched videos on Coach.com, Defendants disclosed event data, which recorded and disclosed the video's title and URL. Alongside this event data, Defendants also disclosed identifiers for Plaintiff, including the c_user and fr cookies. In other words, Defendants did exactly what the VPPA prohibits: they disclosed Plaintiff's vido viewing habits to a third party.

37. Given the nature of Defendants' business, visitors would be shocked and appalled to know that Defendants secretly disclose to Facebook all of key data regarding a visitors' viewing habits."

38. Defendants' conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

---

[21] Civil rights icon Rosa Parks was acting as a "tester" when she initiated the Montgomery Bus Boycott in 1955, as she voluntarily subjected herself to an illegal practice to obtain standing to challenge the practice in Court. *See* https://www.naacpldf.org/press-release/ldf-pays-tribute-to-rosa-parks-on-the-sixtieth-anniversary-of-her-courageous-stand-against-segregation/ "(Contrary to popular myth, Rosa Parks was not just a tired seamstress who merely wanted to sit down on a bus seat that afternoon. She refused to give up her seat on principle. Parks had long served as the secretary of the Montgomery branch of the NAACP [and] challenging segregation in Montgomery's transportation system was on the local civil rights agenda for some time.") (last downloaded November 2022).

39. By disclosing his event data and identifiers, Defendant disclosed Plaintiff's personally identifiable information ("PII") to a third-party.

40. Plaintiff discovered that Defendants surreptitiously collected and transmitted his personally identifiable information in December 2022.

## CLASS ALLEGATIONS

41. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who watched video content on Coach.com and whose PII was disclosed by Defendants to Facebook during the Class Period.**

42. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

43. **Commonality and Predominance (Fed.R.Civ.P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   a) whether Defendants collected Plaintiff's and the Class's PII;

   b) whether Defendants unlawfully disclosed and continues to disclose their users' PII in violation of the VPPA;

   c) whether Defendants' disclosures were committed knowingly; and

   d) whether Defendants disclosed Plaintiff's and the Class's PII without consent.

44. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used Coach.com to watch videos, and had PII collected and disclosed by Defendants.

45.     **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

46.     **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSE OF ACTION

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

## 18 U.S.C.§ 2710, *et seq.*

47.     Defendants are a "video tape service provider" because it creates, hosts, and delivers videos on its website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Defendants also use the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

48.     Plaintiff and members of the Class are "consumers" because they have watched videos on Coach.com. 18 U.S.C. § 2710(a)(1).

49. Defendants disclosed to a third party, Facebook, Plaintiff's and the Class members' personally identifiable information. Defendants utilized the Facebook Tracking Pixel to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like his Facebook ID, along with Plaintiff's event data, like the title of the videos he viewed.

50. Plaintiff and the Class members viewed videos using Coach.com.

51. Defendants knowingly disclosed Plaintiff's PII because it used that data to build audiences on Facebook and retarget them for its advertising campaigns.

52. Plaintiff and Class members did not provide Defendants with any form of consent—either written or otherwise—to disclose their PII to third parties.

53. Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class;

b. For an order declaring that Defendant's conduct violates the VPPA;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. An award of statutory damages under the VPAA;

e. An award of punitive damages;

f. For prejudgment interest on all amounts awarded;

/ / /

/ / /

/ / /

g. For injunctive relief to stop the illegal conduct; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs of suit.

Dated: December 13, 2022

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff