**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESSE CANTU,<br><br>                    Plaintiff,<br><br>  v.<br><br>TAPESTRY, INC.,<br><br>                    Defendant. | Case No. 22-cv-1974-BAS-DDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**(ECF No. 20)** |

     Now before the Court is Defendant Tapestry, Inc.'s Motion to Dismiss (ECF No. 20) Plaintiff Jesse Cantu's Second Amended Complaint ("SAC") (ECF No. 19). Tapestry, Inc. does business as Coach.com ("Coach" or "Defendant"). Defendant argues that Plaintiff has failed to meet his burden under Federal Rule of Procedure ("Rule") 12(b)(6) by failing to state a claim upon which relief can be granted. Plaintiff, a consumer and data privacy advocate, filed an Opposition to the Motion (ECF No. 21), to which Defendant filed a Reply (ECF No. 22). The Court finds this matter suitable for determination on the papers submitted and without oral argument.

     After considering parties' briefing, the relevant law, and the record in this case, the Court hereby **GRANTS** the Defendant's motion to dismiss the SAC with prejudice. Plaintiff has failed to plausibly allege that Defendant is a video tape service provider, one who would be liable under the Video Privacy Protection Act ("VPPA").

## I.  BACKGROUND

This lawsuit is a putative class action on the grounds Defendant violated the VPPA, a federal privacy statute.  18 U.S.C. § 2710.  At this point, the case turns on one question: whether an online retailer may be construed as a "video tape service provider" such that its actions in sharing personally identifiable information of consumers who watch videos on its website make it liable under the VPPA.

### A.  Plaintiff's Factual Allegations

Plaintiff filed his SAC against Defendant Tapestry, Inc., a Maryland corporation that acts as a holding company for several high fashion brands, including Coach, and that "owns, operates, and/or controls the website," Coach.com, from which Plaintiff's claim originates.  (SAC ¶ 5.)

Plaintiff alleges that Defendant leverages an elaborate system of cookies and other data-capturing processes to tailor its marketing and advertising campaigns to its customers.  (*Id.* ¶ 9.)  To do this, Defendant enlists a Facebook-curated software, known as the Facebook Tracking Pixel ("Facebook Pixel").  (*Id.* ¶ 10.)  The Facebook Pixel is a string of programming code that advertisers integrate into their websites.  (*Id.* ¶ 11.)  Once installed, the Facebook Pixel allows Defendant to collect information about how users interact with its site.  (*Id.* ¶¶ 11–13.)

Plaintiff alleges that when a user visits Coach.com, Defendant has programmed the Facebook Pixel to record the Website's URL and the title of any video watched on the website.  (*Id.* ¶¶ 36–43.)  The Facebook Pixel then sends such information to Facebook.  (*Id.*)  It also links a user's video-viewing information to a specific Facebook ID, should that user have a Facebook account.  (*Id.* ¶¶ 41, 52.)  Further summary of how the Facebook Pixel allegedly operates may be found in this Court's prior order dismissing the First Amended Complaint ("FAC").  (ECF No. 17 at 3:6–4:13.)

Plaintiff alleges that Defendant is engaged in the business of delivery of prerecorded video or similar audio-visual materials because Defendant's website, on

which Defendant has embedded the Facebook Pixel, contains videos and is a "critical marketing channel" for the company. (SAC ¶¶ 14–17.)

Plaintiff claims that during the "Class Period," Defendant's website hosted and delivered video content, such as the "Dream It Real" video. (*Id.* ¶ 33.) Plaintiff watched this "Dream It Real" video on Defendant's website. (*Id.*) When he did so, Defendant disclosed to Facebook Plaintiff's personally identifiable information, such as his Facebook ID and the title of the video he viewed, through the process described above. Plaintiff brings suit on behalf of himself and a class of other users similarly situated who have watched videos on Coach.com. (*Id.* ¶¶ 64–69.) Under the VPPA, he seeks statutory and punitive damages, along with injunctive relief. (*Id.* at 21:2–14.)

### B. Procedural History

Plaintiff filed his original Complaint against Defendant near the end of 2022, alleging Defendant violated the VPPA by disclosing Plaintiff's personally identifiable information gleaned from when he watched a video on Defendant's website. (ECF No. 1.) A little over a month later, Plaintiff filed his FAC as a matter of right, alleging the same cause of action as in the original Complaint with additional supporting facts. (ECF No. 8.)

Defendant then filed a motion to dismiss the FAC. (ECF No. 10.) Defendant moved to dismiss the FAC on the grounds that Plaintiff lacked standing or, in the alternative, that Defendant was not a video tape service provider as defined under the VPPA and therefore could not be sued under the statute. (*Id.*)

This Court granted in part and denied in part Defendant's motion to dismiss the FAC. (ECF No. 17.) The Court denied the motion as to Plaintiff's lack of standing. (*Id.*) However, the Court granted the motion as to Plaintiff's failure to state a claim under Rule 12(b)(6) because Plaintiff had not sufficiently alleged Defendant was a video tape service provider under the VPPA. (*Id.*) Plaintiff was granted leave to amend his Complaint.

Plaintiff subsequently filed his SAC (ECF No. 18), and Defendant moved again to dismiss it under Rule 12(b)(6) (ECF No. 20). Plaintiff responded in opposition (ECF No.

21), and Defendant responded with its reply (ECF No. 22). The matter is now ripe for determination.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks and citations omitted). These factual allegations are insufficient when they are merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. In evaluating the sufficiency of these factual allegations, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotations omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009).

### B.   Leave to Amend

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Under Rule 15(a), leave to amend "shall be freely given when justice so requires." However, the Court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). For instance, when a complaint is dismissed for failure to state a claim, a court should not grant leave to amend if the "court determines that allegation of other facts consistent with the challenged

pleading could not possibly cure the deficiency." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (internal quotation marks and citations omitted). In particular, if the plaintiff has previously amended his complaint, the court's "discretion to deny leave to amend is particularly broad." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks omitted).

### III.   ANALYSIS

Defendant seeks to dismiss Plaintiff's SAC under Rule 12(b)(6) for the following reasons: (1) Plaintiff has not plausibly alleged Defendant is a video tape service provider under the VPPA, (2) Plaintiff has not successfully alleged Plaintiff is a consumer under the VPPA, and (3) Plaintiff has not successfully alleged he was a consumer at the time the cause of action arose. (ECF No. 20.) For the reasons stated below, the Court finds Plaintiff has not plausibly alleged Defendant is a video tape service provider under the VPPA. Finding this, the Court declines to address Defendant's remaining bases for dismissal.

The Court begins by discussing the VPPA's definition of video tape service provider and then applies that definition to the allegations in the SAC. Finally, the Court addresses whether Plaintiff may be granted leave to amend.

#### A.   Who Is a Video Tape Service Provider

The VPPA was passed in the 1980s to prevent video tape service providers from disclosing their customers' audio-visual viewing history without consent. S. Rep. No. 100–599, at 4342-6 (1988). In 2012, Congress revisited the VPPA to update it for modern times and modern audio-visual consumption habits. 158 Cong. Rec. H6849-01 (2012). At that time, Congress added provisions allowing for consumers to affirmatively consent to video tape service providers sharing the consumers' viewing histories. Otherwise, Congress did not amend the VPPA and left the remainder of the Act as it was. In short, the modern VPPA operates in much the same way as the original VPPA: it allows consumers to hold liable those video tape service providers who disclose personally identifiable information concerning any consumer. 18 U.S.C. § 2710(b).

The VPPA defines "video tape service provider" as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Upon the facts pleaded before this Court, Plaintiff has not sufficiently alleged that Coach's involvement in hosting and producing audio-visual content for its website, Coach.com, rises to the level of engaging in the business of the "rental, sale, or delivery of prerecorded . . . audio visual materials" as required by the VPPA. *Id.*

Whether Defendant's website contains audio-visual materials is not at issue here—both parties agree the prerecorded videos on Defendant's website satisfy the statute's meaning as to "prerecorded video cassette tapes or similar audio visual materials." Similarly, both parties agree Defendant is neither selling nor renting the videos on its website. Therefore, this motion turns on whether Defendant is "engaged in the business . . . [of] delivery" of the prerecorded videos on its website. *Id.*

Courts have held that under the VPPA, to be "engaged in the business" of audio-visual services such that a defendant's activities rise to the level of video tape service provider requires the plaintiff sufficiently plead the defendant's involvement "connotes a particular field of endeavor" or a "focus of the defendant's work." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *accord Tawam v. Feld Ent. Inc.*, No. 23-CV-357-WQH-JLB, 2023 WL 5599007, at *4 (S.D. Cal. July 28, 2023).

It is not enough that the defendant is engaged in the delivery of video content "peripherally or passively." 238 F. Supp. 3d 1221. The plaintiff must sufficiently allege that the defendant's "products are specifically tailored to serve audiovisual material." *Carroll v. Gen. Mills, Inc.*, No. CV 23-1746 DSF (MRWx), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023).

Hosting and creating prerecorded videos for the purpose of marketing its products does not suffice to plausibly allege Defendant is a video tape service provider. Although the Ninth Circuit has yet to definitively weigh in on this question, district courts across

the country have settled on a core set of factors to use in determining whether a defendant may be a video tape service provider subject to the VPPA.

A seminal opinion on this question held that for a defendant "to be engaged in the business of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio*, 238 F. Supp. 3d. at 1221. Vizio, the defendant, used "automatic content recognition software to collect and report consumers' content viewing histories" on Vizio's Smart TVs. *Id.* at 1212. Vizio then turned around and sold that information "to advertisers and media content providers." *Id.* at 1213. Vizio itself noted in a filing with the Securities Exchange Commission that "if consumers objected to or opted out of its [tracking] software, Vizio's growth strategy would be jeopardized." *Id.* With these factual allegations, the district court held the plaintiffs had sufficiently pled that Vizio's Smart TVs made Vizio a video tape service provider under the VPPA. The court reached this holding because plaintiffs had alleged facts showing Vizio's model "relie[d] on the profits from its sales of consumer data to compensate for its relatively slim margins on Smart TVs." *See id.*

Recently, in *Carroll v. General Mills, Inc.*, a court held that where a defendant merely uses videos to "increase[] its brand presence" it is not a video tape service provider as defined under the VPPA. No. 23-CV-1746 (DSF), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023). In *Carroll*, as here, the case concerned online tracking tags where the plaintiffs' viewing behavior on defendant General Mills's websites was disclosed to Google and/or Facebook. *Id.* at *1. The court held the defendant's delivery of these audio-visual materials was "ancillary to its business" and therefore General Mills was not a video tape service provider. *Id.* at *3. To reach this conclusion, the court reasoned:

> the websites are maintained for the brands; they are not the key component of the brands. The videos on the website are part of Defendant's brand awareness, but they are not Defendant's particular field of endeavor. Nothing suggests that Defendant's

> business is centered, tailored, or focused around providing and delivering audiovisual content.

*Id.* at *4. In other words, using videos as "brand awareness" but not as a "particular field of endeavor" did not raise General Mills's use of audio-visual material to the level where it became a video tape service provider.

Here, as in *Carroll*, Defendant hosts videos on its website as part of "brand awareness" but none of the facts alleged in Plaintiff's SAC suggest that Coach's business is "centered, tailored, or focused around providing and delivering audiovisual content." *See* 2023 WL 4361093, at *4. Instead, Plaintiff describes Defendant's website as a "critical marketing channel" that Defendant uses "to attract potential, new customers and retain existing customers with appealing video content." (SAC ¶ 15.) That the videos are used for marketing purposes, as admitted in the SAC, demonstrates that they themselves are not Defendant's product and therefore are only peripheral to Defendant's business. The videos described in the SAC show Defendant's audio-visual content is centered, tailored, and focused on building Defendant's brand and selling its products. (*See, e.g.*, *id.* ¶ 18 (describing a "prerecorded video advertising Defendant's products"); *id.* ¶ 19 (discussing videos "designed to promote Defendant's brand and products"); *id.* ¶ 20 (describing a video used as part of "policies or programs [used] at least in part to enhance [Coach's] reputations and brands").) Ultimately, Plaintiff does not allege any facts plausibly suggesting that the delivery of this audio-visual material is Defendant's particular field of endeavor or that Defendant's products are specifically tailored to serve audio-visual material.

Plaintiff argues *Stark v. Patreon* and *Jackson v. Fandom, Inc.* support Plaintiff's claim. This is incorrect. In *Jackson v. Fandom*, the case involved defendant's "gaming and entertainment website," and the court held the defendant was a video tape service provider. No. 22-cv-04423-JST, 2023 WL 4607285 at *1 (N.D. Cal. July 20, 2023). *Jackson*'s set of facts is easily distinguishable from the instant case where Defendant's website is a retail website, not a website for gaming or entertainment whose primary

purpose is to deliver audio-visual content to users. Similarly, *Stark v. Patreon* concerned a defendant whose entire business model revolved around hosting videos and selling access to those videos on its platform, whereas here the audio-visual content is used for marketing Defendant's handbags. *See* 635 F. Supp. 3d 841, 845 (N.D. Cal. 2023).

Finally, to meet the pleading standard in federal court, a complaint cannot merely contain "labels and conclusions" to state a sufficiently plausible claim. *Twombly*, 550 U.S. at 555. Here, Plaintiff does just that. For instance, Plaintiff states "Defendant's business model involves monetizing instances in which consumers watch videos." (SAC ¶ 21.) Subsequent paragraphs to this statement then discuss Defendant's active social media channels and how many videos and viewers each has. (*Id.* ¶¶ 22–26.) Plaintiff does not allege a fact where Defendant monetizes the videos on these social media channels, though, leaving the initial allegation without factual support. Therefore, these allegations in the SAC about Defendant's business give rise to an inference that Defendant delivers audio-visual materials as a peripheral part of its business: as a part of Defendant's marketing strategy for its handbags. The allegations do not give rise to an inference that Defendant has tailored its business to the production of audio-visual materials—rather, they suggest the Defendant has tailored its audio-visual materials to market its business.

At the end of the day, Plaintiff has not sufficiently alleged Defendant's hosting and creation of audio-visual materials rises to a level beyond marketing Defendant's products. This means Plaintiff has not sufficiently alleged facts to indicate Coach is a video tape service provider and therefore subject to the VPPA.

### B.  Leave to Amend

The Court should not grant Plaintiff leave to amend if further amendment of the Complaint would be futile. In that case, the cause of action should be dismissed with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating factors for which a court should refuse leave to amend include "repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

As discussed above, Plaintiff has alleged a wide array of facts regarding Defendant's website and business, but further facts in this vein will not sufficiently allege Defendant is a video tape service provider. Even construing all inferences in favor of Plaintiff, the SAC only alleges Defendant is engaged in the business of selling fashion accessories. The SAC's allegations also support an inference the audio-visual material Defendant produces and delivers on its website acts only as marketing for those accessories and the brand. These allegations do not create an inference the audio-visual material is a product in and of itself to which Defendant has tailored its business.

The Court has already granted Plaintiff leave to amend his Complaint on this issue once before and the resulting SAC failed to address the Court's concerns. Finding further amendment futile, dismissal with prejudice is appropriate.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim based on the VPPA. This dismissal is with prejudice. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

**DATED: October 3, 2023**

Hon. Cynthia Bashant
United States District Judge